THE SEDALIA, WARSAW & SOUTHERN RAILWAY COMPANY, *Appellant,* v. WILKERSON, *Administrator.*

1. **Railroads:** STOCKHOLDERS. One can become a stockholder in the capital stock of a railroad corporation only by signing the articles of incorporation or by subscribing to the capital stock after the incorporation.

2.  **When not a Stockholder.** A preliminary subscription to the stock of a proposed railroad, by one who did not sign the articles of incorporation, and who died before the incorporation, cannot be enforced against his estate.

*Appeal from Pettis Circuit Court.*—Hon. J. P. Strother, Judge.

Affirmed.

*Wm. S. Shirk* for appellant.

It is well established, by a line of decisions almost uniform, that a subscription, such as is here in question, is enforcible at common law on the ground that it constituted a continuing offer or promise, although made before incorporation, to subscribe to the capital of the company *when incorporated*, and which, when accepted by the company after incorporation or organization, becomes a valid subscription, and enforcible as such. *Buffalo & N. Y. City R. R. Co. v. Dudley*, 14 N. Y. 336; *Ren. & Wash. Plank R'd Co. v. Barton*, 16 N. Y. 451 and 457; *Penobscot R. R. Co. v. Dummer*, 40 Me. 172; *Anderson v. New. & Rich. R. R. Co.*, 12 Ind. 376; *Johnson v. Wabash, &c., R. R. Co.*, 16 Ind. 389; *Athol Music Hall v. Cary*, 116 Mass. 471; *Johnson v. Ewing Female Un.*, 35 Ill. 518; *Ref. Prot. Church v. Brown*, 24 How. Pr. 76. Many other cases might be cited decided by the supreme courts of Mississippi, Alabama, Connecticut, New Hampshire, Vermont, Maryland, New Jersey and other states—also English decisions. And the death of appellee's intestate before the articles were filed does not render this principle inapplicable to the case at bar. *Bailey v. Hollester*, 26 N. Y. 112; *Tonica, &c., Ry. Co. v. McNeeley*, 21 Ill. 71.

The subscription of appellee's intestate was accepted by the railway company after it was incorporated and organized, and his name placed on the stock books of the company as the owner of fifty-five shares of stock. The

continuing offer was thus accepted, and the company has acknowledged him a stockholder — his administrator is legally entitled to the stock, and must pay the subscription. The subscription should also be held binding, because it was payable only upon condition that the company after organization should do certain things, involving the expenditure of large sums of money. Relying upon the promise of appellee's intestate and others, it complied with such conditions fully, and parties who subscribed or agreed to take stock and pay for it, should be estopped from denying the validity of their subscriptions. *Ashtabula and New L. Ry. v. Smith*, 15 Ohio (N. S.) 328; *Mansfield, &c., Ry. Co. v. Brown*, 26 Ohio (N. S.) 223; *Iowa, &c., R. R. Co. v. Perkins*, 28 Iowa 281; *Peckenny v. George*, 2 Mo. App. 424. The subscription was valid under our statute. *Peninsular Ry. Co. v. Duncan*, 28 Mich. 130; 24 Md. 562; 20 Barb. 155; 21 Barb. 454.

*B. G. Wilkerson* and *Jno. Montgomery, Jr.*, for respondent.

(1) The agreed statement of facts does not show any relation existing between Smith and Newkirk, other than that Newkirk was soliciting subscriptions to a proposed or contemplated railway, and Smith signed the paper which Newkirk had then and retained afterwards and, after Smith's death, delivered to the secretary, of the corporation organized after Smith's death. (2) The corporation itself is the creation of the statute: "There is no common law method of becoming a stockholder in a statutory corporation." *Poughkeepsie & Salt Point Plank Road Co. v. Griffin*, 24 N. Y. 150; *Troy & Boston R. R. Co. v. Tibbitts*, 18 Barb. 297; *Dutchess & Columbia County R. R. Co. v. Mabbett*, 58 N. Y. 397; *Carlisle v. Saginaw Valley & St. Louis Railroad Co.*, 27 Mich. 315; *Peninsular Railway Co. v. Duncan*, 28 Mich. 130; *Parker v. N. C. Mich. R. R. Co.*, 33 Mich. 25; *Dorris v. French*, 4 Hun. 295; *Lake Ontario, &c., R. R. v. Mason*, 16 N.

Y. 454. (3) In order that a subscriber to the capital stock of a corporation shall be bound to pay for stock it is necessary that the contract be such as to bind the corporation to receive the subscriber as a stockholder. Angell and Ames on Corporations, sec. 527. (4) There are none of the elements of an estoppel in this case. Nothing was done at the request of Smith, and nothing appears to have been done on the faith of what Smith did.

MARTIN, C.—This is an action to enforce an alleged subscription to the capital stock of plaintiff. The demand was first presented in the probate court for allowance against the estate of the subscriber; and was taken thence by appeal to the circuit court. The principal facts in the case are set forth in the following agreed statement:

It is hereby stipulated and agreed by and between the parties hereto, that upon the trial of this case the following facts shall stand admitted, viz:

1. That the plaintiff is a railroad corporation, created and existing under the general railroad incorporation laws of the state, under the corporate name of the Sedalia, Warsaw & Southern Railway Company.

2. That its articles of association were filed in the office of the Secretary of State, September 16, 1879, the same having been prepared and signed by the parties thereto, between the first day of September, 1879, and the sixteenth day of September, 1879, and that said Smith did not sign said articles, nor authorize any one to sign his name thereto, and that said Smith died intestate on the eleventh day of July, 1879.

3. That in the year 1877, the defendant, said George R. Smith, signed and delivered to one Cyrus Newkirk, who was afterwards named in said articles as one of the directors of plaintiff and who was then soliciting subscription to the capital stock of said proposed incorporation, now the plaintiff herein, a certain written instrument to be read in evidence in the case.

3½. That prior to the bringing of the suit in the pro-

bate court of Pettis county, the plaintiff had complied with all the conditions of said written instrument referred to in the preceding stipulation as to the construction and completion of said railway, and that on October 30, 1880, plaintiff made a call for payment of all subscriptions to its capital stock.

4. That for the purpose of this trial the same effect shall be given to the instrument referred to in the third stipulation as though the name of the Sedalia, Warsaw & Southern Railway Company appeared in it instead of that of the Sedalia, Warsaw & Memphis Railway Company.

5. That after said articles of association were filed in the office of the Secretary of State, as aforesaid, the plaintiff corporation duly organized by the appointment of Wm. Gentry, one of the directors named in the said articles, as president, also by the appointment of D. H. Smith, another of said directors, as vice-president, Jno. D. Crawford, secretary, and Cyrus Newkirk, treasurer.

6. That after such organization by plaintiff, said Cyrus Newkirk turned over and delivered said instrument referred to in the third stipulation to the secretary of plaintiff, and that plaintiff thereupon received and accepted the same as a subscription to its capital stock, and ordered the name of said Smith to be placed upon its stock books as a stockholder of 55 shares of its capital stock, which was accordingly done.

7. For the purpose of this case the instrument of writing referred to in stipulation No. 3, shall be considered as applying only to the $1,000 cash part thereof, which yet remains unpaid, the remaining portion having been heretofore arranged in a manner not affecting the issues in this case.

8. These stipulations shall not be taken as binding or estopping either party hereto, in any other cause, but shall be used in the trial of this case only.

The plaintiff read in evidence the subscription paper referred to in the stipulation signed by the defendant's

intestate, which constitutes the foundation of the demand against his estate:

"We, the undersigned, agree each severally to take the number of shares of the capital stock of the Sedalia, Warsaw & Memphis [Southern] Railway Company written opposite our names respectively, and to pay for the same as soon as the road of said company shall be fully completed and in operation to the south line of Pettis county, in the direction of Warsaw, and the road-bed of said company completed from Sedalia to Warsaw. The payment of our several individual subscriptions to be secured to the satisfaction of the board of directors of said company before a contract for the building of said road is closed.

| Names. | Shares. | Amount. |
|---|---|---|
| George R. Smith, .... | ——— | ............ $5,500 |

On condition as follows: One thousand dollars cash ; three thousand dollars in work, to be done for said railway company at the shops of the Smith Manufacturing Company, at regular prices ; fifteen hundred dollars in real estate, consisting of the three lots on the north side of Fourth street, in the city of Sedalia, lying south of the lots of the Smith Manufacturing Company, and adjoining the M., K. & T. railroad on the west — above mentioned lots are numbered 14, 15 and 16, of block one, Smith & Martin's Third Addition.

[Signed,]                    G. R. SMITH."

This being all the evidence, the plaintiff asked the court to declare, in substance, that the plaintiff, upon the agreed facts, was entitled to recover the one thousand dollars mentioned in the subscription paper. The court refused to make the declaration and rendered judgment on said facts in favor of defendant, from which the plaintiff appeals.

The only question presented in the record is, whether the defendant's intestate by virtue of his signature to the paper submitted in evidence, which was preliminary

to the execution of the articles of association, became legally bound as a stockholder in the corporation subsequently organized under article 2 of chapter 21 relating to the voluntary incorporation of railroads. The corporation contemplated in this preliminary paper is a creature of the statute. By complying with certain requirements specifically indicated therein, the subscribers of said paper, or any one else desiring the same thing, might become entitled to the rights and be subject to the liabilities of stockholders in a body corporate. The statute which enables them to call into being the body corporate governs their relation to that body. It is full and explicit and leaves no excuse for resorting to the rules of the common law in determining who are and who are not members of the body. I accept this proceeding as an attempt to enforce the statutory liability of the defendant's intestate as a member and stockholder of the association contemplated in the preliminary paper.

In recurring to the statute it would seem that only two modes are provided by which a person may become a subscriber to the capital stock of a corporation, either by signing the articles of association alluded to in the first section of the second article, or by subscribing to the capital stock after the creation of the corporation. The defendant's intestate died before the articles of association which gave being to the corporation were executed and filed, consequently he could not have become a member by subsequent subscription. If he did not become such before they were filed then he was no subscriber or stockholder at all. As it appears from the agreed statement of facts that his name was never signed to the articles of incorporation, the argument against the plaintiff is conclusive, if the premises are correct.

That they are correct, I think no one can doubt after reading the provisions of the statute relating to the incipient steps necessary to be taken in order to give rise to the relation of stockholder and corporation. Section 764, Revised Statutes, provides that any number of persons,

not less than five, may form a railroad company; that for such purpose they may make and sign articles of association in which shall be set forth, the name of the company, period of its existence, the *termini* of its road, its length, the counties through which it is to run, the amount of capital stock, number of shares of stock, and the names and places of residence of the directors. It requires each member to subscribe to such articles by signing his name and place of residence, and the number of shares he agrees to take. A certain amount of capital stock must be subscribed according to the character and length of the road, and five per cent. of the amount so subscribed paid thereon to the directors named in the articles. To these articles must be attached the certificate of at least three directors, under oath, to the effect that the conditions relating to the amount and payment of stock have been complied with. The section then goes on to say: "And thereupon the persons who have so subscribed such articles of association, and all persons who shall become stockholders in said company, shall be a corporation by the name specified in such articles of association, and shall possess the powers and privileges granted to corporations, and be subject to the provisions relating thereto contained in this chapter."

I am unable to perceive how any persons of the requisite number, desirous of forming a railroad company under the provisions of this statute, can do so in any other mode than the one pointed out in it. In no other mode can the relation of stockholder and corporation, under this statute, be established. The statute neither contemplates, nor alludes to, any preliminary paper of subscription such as the one given in evidence. The fact that informal papers and circular letters are commonly signed and published as a part of the enterprise and zeal which gives birth to public corporations, can make no difference as long as the statute fails to recognize them among the necessary and prescribed legal steps to be taken by the incorporators to create the body corporate.

The allusion in the statute to "all persons who shall become stockholders in said company," evidently refers to such as become stockholders by subscribing for stock after the corporation is established, in subscription books opened by the directors, according to the provisions of section 711, Revised Statutes.

It has been held by the courts of New York, in construing a statute in most respects like our own, that a party failing to sign the articles of association could not be subjected to the liability of a stockholder, although he had signed a preliminary subscription paper. *Troy & Boston R. R. v. Tibbitts*, 18 Barb. 297; *Poughkeepsie & Salt Point Plank Road Co. v. Griffin*, 24 N. Y. 150. I find nothing in the cases cited by plaintiff's counsel materially conflicting with this construction. Some of them are cases in which preliminary requests, petitions or subscriptions were made prior to, or in contemplation of the grant of a charter by legislative enactment. The acts when passed took effect upon the petitioners or subscribers, and by force of their terms made them liable as members or stockholders, although they may have failed to participate in the subsequent proceedings by which the corporation was organized. Others are cases in which the act of incorporation, either general or special, had been passed, and the defendants were held liable as stockholders by reason of subscriptions within the peculiar meaning and terms of the acts; or because the acts, unlike the one before us, failed to prescribe any particular method of subscription by which a person might acquire the rights and be subject to the responsibilities of a stockholder. *Tonica, etc., Ry. v. McNeely*, 21 Ill. 71; *Johnson v. Ewing Female University*, 35 Ill. 518; *Buffalo & N. Y. City R. R. Co. v. Dudley*, 14 N. Y. 336; *Hartford & New Haven R. R. v. Kennedy*, 12 Conn. 500; *Taggart v. Western Md. R. R.*, 24 Md. 663; *Penobscot R. R. Co. v. Dummer*, 40 Me. 172; *Kennebec & Portland R. R. v. Palmer*, 34 Me. 366; *Cross v. Pinckneyville Mill Co.*, 17 Ill. 54; *Athol Music Hall Co. v. Cary*, 116 Mass. 471.

I do not regard the case of *Peninsular Ry. Co. v. Duncan*, 28 Mich. 130, as an authority in point. Without assenting to the conclusion reached in that case by a majority of the court (there being an able dissenting opinion against it), I need only remark for the purposes of this case, that the construction adopted by the court was placed upon the peculiar phraseology of the statute which it was held referred to preliminary subscriptions, thereby intending to make the signers thereof members of the corporation when established. There being no such reference or intention contained in the language of our statute, I am of the opinion that the defendant's intestate cannot be held liable as a stockholder by reason of his signature to the paper submitted in evidence. Accordingly the judgment of the court below is affirmed.

Philips, C., not sitting. Ewing, C., concurs. Hough, C. J., absent.