# BUSINESS MEN'S ASSOCIATION, etc., Respondent, v. WILLIAMS, Appellant.

### St. Louis Court of Appeals, May 11, 1909.

1. **CORPORATIONS: Stockholders: Preliminary Subscription.** Whether a person who signs a preliminary subscription paper, agreeing to take stock in a corporation to be thereafter organized under section 1312, Revised Statutes 1899, and following sections, becomes thereby a stockholder, without signing or acknowledging the articles of association or attending the preliminary meetings of the stockholders, is discussed but not decided.

2. ———: ———: ———: **Consideration.** Where many persons sign a preliminary subscription for stock in a corporation to be thereafter organized, it is a sufficient consideration for the promise of each to take stock that the others have made a like promise.

3. ———: ———: **Ratification: Estoppel.** Where an original subscription for stock in a corporation, to be afterward organized, was irregular and unenforceable, a subscriber, who after the incorporation paid a part of the amount subscribed by him, by such act ratified the irregular subscription; the acceptance of the amount so paid bound the corporation to recognize him as a stockholder and he was thereby estopped to deny the relation.

4. ———: ———: **Agency: Estoppel.** Where in a preliminary subscription paper for stock in a corporation to be thereafter organized, a subscriber authorized the proposed board of directors to represent him as they saw fit in the formation of the corporation, he was thereby estopped to deny that he was a stockholder in the corporation, though he did not sign the articles of incorporation nor attend the meeting at which it was organized; the participation of his agents thus appointed was sufficient to estop him.

Appeal from Louisiana Court of Common Pleas.—*Hon. David B. Eby*, Judge.

AFFIRMED.

*Pearson & Pearson* for appellant.

The agreement of September 2, 1905, pleaded and introduced in evidence as Exhibit 3, was not a subscription for shares of stock in any corporation, but was simply an informal or preliminary paper of subscription —such as is commonly signed as a part of the enterprise and zeal which gives birth to a corporation; but which the statute fails to recognize among the necessary and prescribed steps to be taken by the incorporators to create a body corporate. It was nothing more than an informal or preliminary statement by the appellant that if the promoters of a corporation, therein proposed to be formed, wanted him as one of its incorporators, and would give him an opportunity, he would sign the articles of incorporation, and subscribe for $20.00 worth of stock. Railroad v. Wilkerson, 83 Mo. 240. The corporation contemplated in this preliminary paper of subscription, signed by appellant, is a creature of the statute. And, it is only by complying with certain requirements, specifically indicated therein, that appellant might become entitled to the rights, and be subject to the liabilities of a stockholder, in appellee or any other corporation. R. S. 1899, secs. 957, 1312, 1313; Railroad v. Wilkerson, 83 Mo. 241; Hotel Co. v. Wright, 73 Mo. App. 244.

*Robt. A. May* for respondent.

That all of the stock had been subscribed and paid for by the incorporators is entirely foreign to this controversy. As soon as respondent had completed its part of the agreement its right of action became complete. Davis v. Johnson, 49 Mo. App. 240. The incorporators became trustees or agents for the entire body of the subscribers to carry out the object of the subscriptions; and appellant, by the terms of his subscription, gave them full power to act for him, and he cannot now be heard to question their authority. Hotel Co. v. Wright,

73 Mo. App. 240; Swain v. Hill, 30 Mo. App. 443. That appellant never signed or acknowledged the articles of incorporation is no defense, especially is this true because of the fact that he authorized the incorporators to represent him as they might see proper in the formation of the corporation, and they signed the articles for him and as his trustees and agents. Davis v. Johnson, supra; Hotel Co. v. Wright, supra, 243. The claim that appellant's contract of subscription was without consideration is without foundation, for such a contract is supported by a sufficient consideration as soon as the promisee has expended money, or labor on the faith of it. James v. Clough, 25 Mo. App. 147; Swain v. Hill, 30 Mo. App. 436; School District v. Sheily, 138 Mo. 685; Koch v. Lay, 38 Mo. 147; Pitt v. Gentle, 49 Mo. 74; Workman v. Campbell, 46 Mo. 305; Henrich v. Coal Co., 102 Mo. App. 229. The instrument sued on imports a consideration under section 894, Revised Statutes 1899. Trustees v. Hoffman, 95 Mo. App. 488.

NORTONI, J.—This is a suit seeking to enforce the obligation of a stockholder in plaintiff corporation. Plaintiff recovered and the defendant appeals.

It appears that the defendant and a large number of other business men, citizens of the city of Louisiana, Missouri, had associated themselves together into a voluntary association known as the "Business Men's Association." The object and purpose of this voluntary association were to enhance the business interests of the city and induce important concerns to locate therein. This voluntary association received a proposition from the Wells-Fargo Shoe Company to the effect that if the association would procure the ground, erect a suitable building thereon, and donate the same to that company it would open a shoe factory in the city of Louisiana which would employ a considerable number of persons. To effectuate this proposition, the members of the Busi-

ness Men's Association, set about to procure its incorporation into a company for the purpose of receiving title to the grounds contemplated, erecting the necessary building thereon, and donating the same to the shoe manufacturer mentioned. With this end in view, the defendant executed the following preliminary paper purporting to obligate him to take $20 worth of stock in the proposed corporation. A large number of other persons, some of whom were his associates in the voluntary asociation and others who were not, subscribed likewise to the same end. The subscription paper to which defendant subscribed, is as follows:

"Louisiana, Mo., Sept. 2nd, 1905.

"I hereby agree to take twenty dollars worth of stock in a corporation to be formed by the Business Men's Association of Louisiana, Mo., the capital stock of which is to be $25,000; or such less sum as the said association may decide upon, for the purpose of purchasing a site in said city, or adjacent thereto, and erecting thereon a suitable building, with appurtenances for a shoe factory. Certificates of stock to be issued me by said proposed corporation, when formed, for the amount of my paid up subscription. I agree to pay Ten dollars of said amount in cash on demand, and the balance in installments of two dollars per month to the persons to be named as the first board of directors of said proposed corporation, and I hereby authorize and empower said proposed board of directors to represent me and vote my stock as they may see proper in the formation of such corporation; and on compliance with the requirements of said association by the persons or corporation occupying said shoe factory building the stock which I may hold shall become the property of said persons or corporation occupying the same, whenever said board of directors may order."

About ten days after this subscription was executed, to-wit, September 12, 1905, a meeting of the Business Men's Association (that is, the voluntary association) was held for the purpose of moving toward the incorporation thereof. The defendant did not attend the meeting, however. At the meeting mentioned it was agreed by those present that the incorporation should be effected under the name of "Business Men's Association," the capital stock to be $2,500 and twenty-five members of the voluntary association were selected as incorporators thereof. Immediately thereafter, incorporation was had, in pursuance of the plan marked out at the meeting mentioned. Twenty-five members of the association subscribed and acknowledged the articles of association as contemplated by our statutes (R. S. 1899, secs. 1312, 1313), and such further proceedings were had as resulted in the incorporation of the plaintiff company in due form of law, in pursuance of the sections referred to, and section 1314, Revised Statutes 1899. As stated, the defendant did not personally attend the preliminary meeting referred to nor did he subscribe to or acknowledge the articles of association. Whatever interests the defendant may have had as a proponent touching the matter of becoming a stockholder in the corporation, were represented in the organization of the company by the thirteen of his associates who were selected and named in the articles as the first board of directors of the incorporated company. After the company was duly incorporated, the defendant paid $10 of the amount subscribed by him on the preliminary paper, to the plaintiff's board of directors. He refused to pay the additional $10 thereafter for the reason, as alleged by him, that he was not obligated to do so by having signed the articles of association or otherwise brought himself strictly within the terms of the statute pertaining to the organization and incorporation of the company. The defendant insists that the paper he executed amounted to no more than an unauthorized preliminary paper

which was not contemplated by the terms of the statute, to be an essential prerequisite to the formation of a manufacturing or business incorporated company. It is argued that unless he subscribed and acknowledged the articles of association mentioned in the statutes (secs. 1312, 1313, 1314) the relation of stockholder and corporation did not arise between him and the plaintiff, and therefore this action may not be maintained thereon. We are cited to, and the rule announced touching the organization of a railroad corporation in Sedalia, etc., Ry. Co. v. Wilkerson, 83 Mo. 235, is invoked to sustain this argument. In the view we have taken of the case, it will be unnecessary to decide whether the rule of that case is controlling here in respect to the organization of a manufacturing or business corporation, under another and distinct statute. It may not be out of place, however, to say that there is a notable distincttion in respect of the requirements of the statutes touching the organization of incorporated manufacturing or business companies, as will appear by reference to sections 1312, 1313 and 1314, and the requirements touching the organization of a railroad company, to be found under the provisions of section 1034, Revised Statutes 1899, under which the Wilkerson case was decided. Section 1034, touching the matter of railroad companies, authorizes not less than five persons to form a corporation for the purpose of constructing and operating a railroad. Among other things, that section says: "each subscriber to said articles of association shall subscribe thereto his name, place of residence and the number of shares of stock he agrees to take in said company." After having recited this and several other requirements therein which are not essential to notice here, that statute declares what shall be a corporation thereunder as follows: "And thereupon the persons who have so subscribed such articles of association, and all persons who shall become stockholders in said company, shall be a corporation by the name specified in such articles of

association and shall possess the powers and privileges granted to corporations, and be subject to the provisions relating thereto contained in this chapter." Another section (section 1042, same article) authorizes a railroad company after incorporation, to receive subscriptions to the capital stock in aid of the construction or equipment of its road, to be known as transportation subscriptions. Mention of "all other persons who shall become stockholders" under section 1034, was said in the Wilkerson case, to probably have reference to such persons as become stockholders after the incorporation of the company by subscribing to its capital stock, as contemplated in section 1042, above referred to. In construing those statutes the Supreme Court in the Wilkerson case, pronounced judgment to the effect that no person can become a stockholder in an incorporated railroad company by merely signing a preliminary subscription paper, very much in the nature of that involved in this case, for the reason such a paper was not contemplated by the statute and the purported subscriber had neither subscribed to the articles of association, as required by the statute, nor subscribed to the stock in the books of the company after the company was incorporated, as is now contemplated by section 1042. The notable distinction between section 1034, pertaining to railroad companies, and section 1312 pertaining to the organization of manufacturing and business companies, is as follows: Section 1312, after authorizing three or more persons to associate themselves together by articles of agreement in writing for the purpose of incorporating, among other things requires the names and places of residence of the several shareholders and the number of shares subscribed by each to be recited in the articles of association. There is no pointed language in this section requiring a subscriber to subscribe his name to those articles. It recites only that his name and residence and the amount of stock subscribed for shall be recited therein. If all stockholders are required to sub-

scribe to those articles, the obligation to do so arises by implication from the employment of the word "subscribed" in the section. The point is, this section is not definite and certain in respect of requiring the stockholder to subscribe to the articles, as is section 1034, touching the organization of railroad companies. Besides, this section does not declare what shall constitute a corporation, as does section 1034 pertaining to railroad companies. Now by reference to the succeeding section, section 1313, touching manufacturing and business companies, it requires the articles of agreement shall be signed and acknowledged by all the parties thereto. The words "all the parties thereto" are somewhat indefinite and while they certainly include all parties who have signed the articles, they possibly may or possibly may not include persons who have signed the preliminary paper. We say this in view of the language employed in section 1314, declaring what shall constitute a corporation, as that section seems to contemplate associates of persons acknowledging the articles of association. It is indeed section 1314 which declares incorporation. That is to say, it provides that: "Persons so acknowledging the articles of association and the associates and successors, shall, for a period not to exceed fifty years next succeeding the issuing of such certificate, by the Secretary of State, be a body corporate." Now this language seems to contemplate that there may be associates other than those who acknowledged the articles of association, and that the relation of stockholder and corporation may arise between the company and such associates, even though they were not parties to the articles of agreement. However this may be, the question is not so decided. We reserve an opinion therein out of deference to the Supreme Court in its construction of section 1034 in the Wilkerson case. It is unnecessary to decide the question in this case as the judgment of the court may be rightfully given upon other valid grounds. It is thought proper, however, to

point out the distinction which obtains with respect to the statutes now under consideration and that involved in the Wilkerson case. And indeed, we believe a fair construction might lead to the conclusion that an associate who has not signed or acknowledged the articles of association, might become a stockholder upon an otherwise sufficient contract in that behalf in a manufacturing and business association.

The cases of Haskell v. Sells, 14 Mo. App. 91, and Haskell v. Worthington, 94 Mo. 560, relied upon by the plaintiff are not in point here, although those cases proceeded in affirmance of the obligation of a stockholder against one who had subscribed only the preliminary paper for stock in a manufacturing and business incorporated company, as in this case. They were decided under a different and distinct statute. A study of the opinions in those cases will disclose that the judgments therein were given concerning a company organized under the provisions of sections 1 and 2, chapter 7, Wager's Statutes of 1870. Those statutes were not as explicit as the statute now under consideration with respect to requiring the articles of association to recite the names and residences of the subscribers.

It appearing that the defendant was one of many who executed a like promise to take stock in the corporation to be thereafter organized, it is certain that a sufficient consideration therein existed at common law; that is to say, that the promise of each for the promise of the other associates, is a sufficient consideration. [6 Am. and Eng. Ency. Law (2 Ed.), 727; Moss v. Green, 41 Mo. 389.] The relation of stockholder and corporation arises from and exists in contract. So much is beyond question. [1 Thompson on Corp., sec. 1136; 1 Cook on Corp. (6 Ed.), sec. 51.] It would therefore seem, on sound principle, that defendant should be required to respond for the amount of the preliminary subscription on the theory that it was a valid and subsisting contract between two or more, in favor of a third

party, the corporation thereafter formed. The several associate subscibers having moved forward and organized the corporation on the faith of the mutual subscriptions, the contractual rights of the parties ought, in accord with the most familiar principles of natural justice, inure to the benefit of, and be enforceable by, the corporation subsequently formed. In respect of this matter, we believe the subscription should be treated as a proposition by defendant to become a stockholder in the proposed company, and the subsequent organization of the company, within a reasonable time thereafter, should be treated as an acceptance of the defendant's proposition, to the end of establishing the essential contractual obligation affixing the relation of stockholder and corporation. For our views on this question see Railroad v. Crow, 137 Mo. App. 461; 119 S. W. 435. However, in view of the doctrine announced by the Supreme Court in Sedalia, etc., Ry. Co. v. Wilkerson, supra, we only express our views on this subject, without resting the decision of the case thereon. The judgment of the court will be placed upon other grounds entirely clear. Nevertheless, authority may be found for these views in Haskell v. Sells, 14 Mo. App. 91; Haskell v. Worthington, 94 Mo. 560. See also New Lindell Hotel Co. v. Smith, 13 Mo. App. 7, 13; Newland Hotel Co. v. Wright, 73 Mo. App. 240, 243.

Although there is no valid and enforceable contract of subscription in the first instance, the relation of corporation and stockholder may arise from acts and conduct of the parties which evince to a certainty a meeting of the minds to that end, upon a sufficient consideration. Such acts and conduct may amount to a ratification of a prior insufficient contract or may invoke the influence of those principles which preclude a denial of the relation in the interests of justice. The books are replete with cases where the parties have, by acts and conduct, operated an estoppel against themselves; the

one to deny the relation of stockholder, and the other, that of corporation. With these principles in mind, let us then examine other features of the case.

Mr. Spelling says: "A convenient test of the question whether one is liable as a stockholder is the position in which the contract in question has placed the corporation. If it is bound by its terms to receive the party as a member for the purposes of voting or enjoying other privileges of membership, it is a valid subscription." [1 Spelling, Private Corp., sec. 318; Parker v. Northern, etc., Ry. Co., 33 Mich. 23; University of Des Moines v. Livingston, 57 Iowa, 307; Terrett v. Rockland, etc., Insurance Co., 65 Me. 374.] And as said by Mr. Waterman: "A criterion of the liability of a subscriber to stock in a corporation is, whether any act has been done by which the corporation has been forced to receive the subscriber." [2 Waterman on Corp., 7 and authorities supra; Kirkwood, etc., Assn. v. Van Ness, 61 Mo. App. 361, 365.] Now if it appear that the plaintiff did any act on its part in affirmance of the voluntary act of the defendant by which the minds of the parties are seen to have met, upon the proposition that he shall become a stockholder in the plaintiff company, and which operated as an obligation upon the plaintiff company to receive him as such, then he is estopped from asserting to the contrary. It appears in the proof, and in fact, the defendant admits it to be true, that about one month after the company was incorporated he paid to the plaintiff's board of directors $10, or one-half of his subscription on the preliminary paper. This payment having been accepted by the defendant company, it of course became obligated to accord him the rights and privileges of a stockholder to that extent. Indeed, it appears that although by the terms of the preliminary paper the stock was not to be issued to the defendant until paid for, the company did actually tender to him $20 of its stock upon demanding payment of the remaining $10 which was then past due. All of the au-

thorities go to the effect that even though the original subscription is irregular and unenforceable as such for the reasons that the statutory or other conditions are not complied with, payment of either a part or the whole of the amount of the subscription after the corporation comes into being, will operate as a ratification on his part of the preliminary irregular subscription.    This upon the principle that its acceptance binds the corporation to respond to him in the capacity of stockholder,. and he is thereby estopped from denying the obligation on his behalf, unless the payment was induced by fraud or misrepresentation, of which there is no evidence in this case. [1 Thompson on Corp., sec. 1167; Kirkwood, etc., Ry. Co. v. Van Ness, 61 Mo. App. 361; Kansas City Hotel Co. v. Hunt, 57 Mo. 126; Kennebec, etc., Ry. Co. v. Palmer, 34 Me. 366; Bell's Appeal, 115 Pa. St. 88; 26 A. & F. 943.]

In Kansas City Hotel Co. v. Hunt, 57 Mo. 126, Judge NAPTON thus states the law on the question: "The cases in regard to this point have been examined, and they all agree that where the subscription has been acquiesced in, either by the payment of a part of the subscription or by becoming a director, or by attending the meetings of stockholders, or by any other act, indicating he acquiesces in the validity of his subscription, his defense based on mere technical objections, will be disregarded." So we see, even though the preliminary subscription may have been irregular and unenforceable as such the ratification thereof involved in the act of payment to the corporation thereon, operates an estoppel upon the defendant in this case, sufficient to preclude him from denying the relation of stockholder which he is entitled to enforce against the company by virtue of its having accepted his voluntary payment.

Another question is presented by the record, by which we believe under the authorities, the defendant is estopped from denying the relation of stockholder in this corporation.    It appears in the subscription pa-

per that the defendant authorized and empowered the proposed board of directors to represent him as they saw fit, in the formation of such corporation, etc. Although he did not personally attend the meeting and participate in the organization of the company, it appears that those who were named as the first board of directors did attend the same and participated for him therein. It is well settled that even though the preliminary subscription be irregular and unenforceable, if the party subscribing thereto attends the meeting and participates in the organization of the contemplated corporation, he is estopped thereby to thereafter deny his obligation in that behalf. [Newland Hotel Co. v. Wright, 73 Mo. App. 240, 244; International Fair Assn. v. Walker, 83 Mich. 386; Salem, etc., Ry. Co. v. Tipton, 5 Ala. 787, 807, 809; Kansas City Hotel Co. v. Hunt, 57 Mo. 126, 130; Kirkwood, etc., Assn. v. Van Ness, 61 Mo. App. 361, 364; Central Plank Road Co. v. Clemens, 16 Mo. 359; 1 Elliott on Railroads (2 Ed.), sec. 115; 26 Am. and Eng. Ency. Law (2 Ed.), 942; 1 Cook on Corp. (6 Ed.), sec. 52.] And the principle extends as well to one who has subscribed to an irregular preliminary paper and therein appointed another to participate for him in the organization of the proposed company. In Eastern Plank Road Co. v. Vaughn, 20 Barb. 155, 159, it appeared the subscriber had affixed his signature to an irregular preliminary paper by which he authorized Boyd and Wood to act for him in and about the formation of the proposed company. The court said: "If Boyd and Wood were the lawfully appointed agents of the defendant for the latter purpose, and the subscription would seem to confer that power, then such subscription in the books of the corporation is binding and obligatory upon the defendant and he is a stockholder of the corporation to all intents and purposes, and is as much bound as though he had subscribed the article of association with his own hand." See also to the same effect, President, etc., Centre, etc., Turnpike Co. v.

M'Conaby, 16 Serg. & R. (Pa.) 149; Central Plank Road Co. v. Clemens, 16 Mo. 359, 365.

It is said, however, that the obligation cannot be enforced in this case for the reason further that the original subscription, if at all, was to a corporation of $25,000, whereas the company organized for only $2,500 capital instead. It will appear by reference to the subscription paper that it was stipulated therein the company should be organized for $25,000 or such a less amount as the association might decide. At the meeting of the voluntary association, it decided to incorporate for $2,500 instead. This matter comes strictly within the terms of the instrument. And aside from that, the elements of estoppel obtain with equal force and effect as against the present defendant. He having voluntarily paid $10 on his subscription to the company organized for $2,500 when it came into being and participated by his proxy, through those named as the first board of directors in the organization of the company, is estopped to assert to the contrary.

It is said, however, that the defendant company issued all of its stock to the twenty-five persons who acted as incorporators and therefore it is not able to execute its obligation to him by making him a stockholder therein. As stated before, it appears that the corporation actually tendered $20 in stock to the defendant. However this may be, it is no defense to an action on a subscription that the corporation has not delivered or tendered to the defendant the certificate of stock to which he was entitled. This doctrine proceeds upon the theory that it is the contract and acts of ratification and estoppel on an irregular contract which bring forth the relation of stockholder and corporation and the certificate itself amounts to no more than the evidence of the right of the stockholder to participate therein. The question is abundantly well settled by all of the authorities and it is unnecessary to discuss it. For a decision of our Supreme Court in point, see Schaeffer v. Mis-

souri Home Ins. Co., 46 Mo. 248, 250; 1 Cook on Corp. (6 Ed.), sec. 190; 10 Cyc. 389, 390. By the very terms of the preliminary paper in this case, no stock was due the defendant until he had paid for the same. Aside from this it was not even incumbent upon the plaintiff to make a tender, as it did.

The judgment was for the right party and will be affirmed.